**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRANDON SMITH, TODD BERDANIER and NICK HEINER, individually and on behalf of all others similarly situated, <br><br>            Plaintiffs, <br><br>     v. <br><br> BELL-MARK TECHNOLOGIES CORPORATION, <br><br>            Defendant. | Case No. 1:17-cv-01600 <br><br> (Chief Magistrate Judge Schwab) |

**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE**
**COLLECTIVE ACTION SETTLEMENT AND ATTORNEYS' FEES**
**WITH MEMORANDUM IN SUPPORT**

Plaintiffs Brandon Smith, Todd Berdanier and Nick Heiner ("Plaintiffs" or "Plaintiffs Smith, Berdanier and Heiner"), respectfully move for approval of the Amended Stipulation of Settlement[1] ("Settlement") reached in this putative class and collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b). The Court should grant this motion to approve the Settlement because it is a fair and reasonable resolution of a *bona fide* dispute. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *accord Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008). Defendant Bell-Mark Technologies Corporation ("Bell-Mark") does not oppose this motion.

---

[1] Exhibit A attached hereto.

## <u>MEMORANDUM IN SUPPORT</u>

Plaintiffs respectfully move for approval of the Settlement reached in this putative class and collective action.  Plaintiffs claimed that Defendant Bell-Mark Technologies Corporation ("Bell-Mark") misclassified them and other Field Service Technicians as exempt, and failed to pay overtime for hours worked and spent traveling to client sites in excess of 40 hours per week.  Bell-Mark denied the allegations, arguing that the Field Service Technicians are exempt under the administrative exemption, that much of their travel time was non-compensable under governing law, and that the class action allegations failed for lack of numerosity, given that there were fewer than 25 Field Service Technicians employed during the relevant time period.

After exchange and analysis of payroll data and expense reports, a mediation and further arm's length negotiations, Plaintiffs and Bell-Mark ("the Parties") reached a settlement in an amount not to exceed $220,000 ("Global  Settlement Amount"), as follows:

- Participating Collective Action Members will be paid over $47 per workweek within the limitations period, which represents an additional half-time pay for approximately four (4) hours of overtime per workweek (over and above the salary they were already paid for such hours), based on an

average regular rate during the limitations period of $22.28 in exchange for a release of claims, totaling $93,315;

- Incentive payments will be paid to Plaintiffs for serving as named plaintiffs, totaling $20,000;

- Additional consideration will be paid to Plaintiffs Smith, Berdanier and Heiner in exchange for a General Release of their other non-wage claims, totaling $31,852; and

- Plaintiffs and Participating Collective Action Members will recover their attorneys' fees and costs, totaling $74,833.

Plaintiffs have dropped their class action allegations and agreed to settle the Lawsuit on an opt-in basis under the procedures governing settlements under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b).

The Court should grant this motion to approve the Settlement because it is a fair and reasonable resolution of a *bona fide* dispute. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *accord Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008). This outcome is a model of efficient resolution, achieved early in the case by experienced counsel for both sides, with minimal burden on the Court. Bell-Mark does not oppose the motion.

### Facts and Procedural History

Bell-Mark is a small company based in Dover, Pennsylvania. Bell-Mark manufactures specialty printers and provides printing solutions in the medical device, pharmaceutical, and food industries. For example, for food and pharmaceutical clients, Bell-Mark develops printers and software that will print expiration dates on packaging.

Plaintiffs were formerly employed as Field Service Technicians for Bell-Mark. Field Service Technicians work at client sites to adapt, install and trouble-shoot Bell-Mark's software and printers for diverse client applications. They recommend modifications, train clients and provide client support. When they are in the shop, they prepare for client service trips, interact with printer developers to learn the technology, provide input regarding the specific applications, and interact with clients by phone, among other things. Plaintiffs were paid on a salary basis during their employment.

On September 8, 2017, Plaintiffs filed a class and collective action Complaint against Bell-Mark on behalf of themselves and others similarly situated alleging that Bell-Mark violated the FLSA, the Pennsylvania Wage Payment and Collection Law, 43 P.S. 260.1 *et seq.* and the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 *et seq.*, by failing to pay Plaintiffs and similarly situated employees for overtime hours worked ("the Lawsuit"). (Doc. 1). Bell-Mark filed

an Answer denying the material allegations of the Complaint on January 9, 2018.
(Doc. 6).

On May 29, 2018, the Parties attended mandatory mediation.  The attorneys
who attended the mediation are experienced wage and hour litigators and
vigorously represented their clients' respective interests.  Despite a good faith
attempt by the Parties and the mediator, a resolution of the matter was not possible
as the attempt at mediation was deemed premature by all involved.

Subsequent to the mediation, the Parties embarked on an investigation and
exchange of information to ensure an informed and constructive post-mediation
dialogue.  The Parties exchanged critical data, and counsel consulted with their
respective clients with regard to the information that was received.  The Parties
evaluated the payroll data and time/travel/expense reports, as well as defenses
which Bell-Mark intended to raise to Plaintiff's claims.  Negotiations were robust
as both sides zealously advocated their interests.  As a result of extensive analysis
and discussions with each other, the Parties were able to reach a mutually
acceptable settlement.

## Settlement Terms

The Settlement enables eligible members to resolve the wage and hour
claims asserted in the Lawsuit.  The Putative Collective Action Members for
purposes of settlement includes current or former employees who during any

workweek from June 1, 2016 to April 1, 2019 were employed as a Field Service Technician who traveled to client sites.[2]   There are 20 individuals, including Plaintiffs Smith, Berdanier and Heiner, who are covered by the settlement.   An additional former Field Service Technician, Earl Haley, separately sued Bell-Mark claiming retaliation and wage claims, and the motion to approve that settlement was approved.   *Earl Haley v. Bell-Mark Technologies Corporation*, Middle District of Pennsylvania Case No. 1:17-cv-01775-CCC ("Haley Lawsuit").

The Settlement provides for a Global Settlement Amount of up to $220,000.00, inclusive of attorneys' fees and costs, to resolve all claims of the Putative Collective Action Members for unpaid wages alleged in the Lawsuit.   The Global Settlement Amount will be allocated as follows: (1) $93,315.00 will be allocated to pay the claims of those who opt into the Settlement ("Participating Collective Action Members"); (2) $31,852.00 will be allocated to individual settlements of non-wage claims of Plaintiffs Smith, Berdanier and Heiner in exchange for a global release; (3) $20,000.00 will be allocated to Plaintiffs Smith, Berdanier and Heiner for serving as named plaintiffs; and (4) $74,333.00, or such

---

[2] June 1, 2016 is two (2) years prior to the date of the Parties' tolling agreement on June 1, 2018.  The original Stipulation of Settlement was filed with the Court on April 8, 2018.  The relevant time period for Plaintiffs Smith, Berdanier, and Heiner dates back to September 9, 2014, three (3) years before September 8, 2017, when they filed the Lawsuit.

other amount approved by the Court, shall be allocated to pay Plaintiffs and the Participating Collective Action Members' attorneys' fees and costs.

The amount of settlement distributions to Participating Collective Action Members shall be determined as set forth above. One-half of all settlement distributions will be deemed wages, subject to applicable withholdings and previously authorized deductions and reported on a W-2 Form. The other one-half will be deemed interest and liquidated damages and reported on an IRS Form 1099 in Box 3.

Plaintiffs' counsel engaged in numerous discussions with Plaintiffs, other Putative Collective Action Members, and counsel for Bell-Mark to determine the scope of the claims of the Putative Collective Action Members and the defenses that would be asserted. Based upon these discussions, Plaintiffs' counsel determined that questions existed with respect to whether some or all of the claimed overtime hours were actually compensable. Furthermore, arguments were raised by Bell-Mark that it acted in good faith and would likely be able to defend against an assessment of liquidated damages.

Importantly, no Putative Collective Action Member must participate, nor submit anything to opt out of the Settlement in order to preserve any claim. Instead, only Putative Collective Action Members who affirmatively participate

will release their alleged claims.  Any unclaimed portion of the Global Settlement

Amount will revert back to Bell-Mark.

The Release provision is narrowly tailored to the wage claims that were

asserted or could have been asserted in the Lawsuit, and applies only to those who

choose to opt in and accept the Settlement.  It provides, *in toto*:

> "Released Claims" means any and all claims alleging violation of
> federal, state and/or local statute, regulation, ordinance or common
> law relating to the payment of wages or overtime in connection with
> employment with Defendant Bell-Mark that were raised or could have
> been raised in this lawsuit, including any associated claims for wages,
> penalties, liquidated damages, interest, compensatory damages,
> punitive damages, or any other item of damages, and/or attorneys'
> fees and costs; except that with respect to Plaintiffs Smith, Berdanier
> and Heiner, "Released Claims" is defined more broadly in their
> separate General Releases.

(Exhibit A at 5, ¶22).  In addition to the above Release, Plaintiffs Smith, Berdanier,

and Heiner are granting a general release of claims beyond those wage claims

brought in this case in exchange for a total gross amount of Thirty-One Thousand

Eight Hundred Fifty-Two Dollars and No Cents ($31,852.00) as follows:

$13,320.00 to Plaintiff Smith, $1,030.00 to Plaintiff Berdanier, and $17,502.00 to

Plaintiff Heiner.

The proposed Notice of Settlement of Collective Action Lawsuit to be sent

to the Putative Collective Action Members (Exhibit 1 to Exhibit A attached hereto)

fully and clearly informs them of the material terms of the Settlement, their rights

to participate or not, the possible limitations on their rights should they not

participate, the precise scope of the release, and the procedure to implement whatever decision each individual makes regarding the Settlement.

In addition to compensating Plaintiffs and Participating Collective Action Members for their unpaid overtime wages, the Settlement provides for a $10,000.00 service award for serving as named plaintiffs to Plaintiff Smith, a $5,000.00 service award to Plaintiff Berdanier, and a $5,000.00 service award to Heiner, who were all instrumental in pursuing this case, and diligently worked and met with Plaintiffs' counsel to investigate the case, attend mediation, and further the litigation, all for the benefit of themselves and the Participating Collective Action Members who will recover under this Settlement.

## Argument

### I.   The Standard for FLSA Opt-In Settlement Approval

This Lawsuit was settled on an opt-in basis under the FLSA, as Bell-Mark vigorously contested Plaintiffs' Rule 23 class action allegations for lack of numerosity.   As a result, the Settlement has no binding effect on Putative Collective Action Members unless they affirmatively accept the benefits of the Settlement by opting in and becoming Participating Collective Action Members (unlike Rule 23 settlements, which is binding on absent members unless they affirmatively opt *out* of the class).  *Compare, e.g., Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("a judgment in a properly entertained class

action is binding on class members in any subsequent action") *and Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining purpose of Rule 23 notice is to advise class members they will be *bound* by judgment unless they request exclusion) *with Greenwald v. Phillips Home Furnishings Inc.*, 2009 WL 259744 at *4 (E.D. Mo., Feb. 3, 2009) ("A collective action under [the FLSA, 29 U.S.C.] § 216(b) differs from class actions brought under Rule 23 . . . . A primary distinction is that under FLSA a similarly situated employee must 'opt in' to the collective action to be bound by it.").

"The primary focus of the court's inquiry in determining whether to approve the settlement of an FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, but rather on ensuring that an employer does not take advantage of its employees in settling their claims for wages." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (internal citations omitted).

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Simmons v. Enterprise Holdings, Inc.*, 2012 WL 2885919 at *1 (E.D. Mo. July 13, 2012) (citing *Lynn's Food Stores,* 679 F.2d at 1353). "Accordingly, as long as the Court is satisfied that a settlement reached in adversarial proceedings represents a fair

and equitable compromise of a bona fide wage and hour dispute, the settlement may be approved." *Id.*  Court review of an FLSA settlement is two-pronged.  First, the Court must be satisfied that the settlement was the product of "contested litigation."  Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties.  *Lynn's Food Stores,* 679 F.2d at 1353-1354.  Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness.  *Id.* at 1354.  If the proposed settlement reflects a reasonable compromise of contested issues, the Court should approve the settlement in order to promote the policy of encouraging settlement of litigation.  *Id.*

"While the Third Circuit has not directly addressed the factors to be considered in deciding motions for approval of FLSA settlements, district courts have typically looked to the considerations set forth in *Lynn's Food*."  *Brumley v. Camin Cargo Control, Inc.*, CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012).  This Court should readily conclude the Parties' Settlement here is a reasonable resolution of a *bona fide* dispute in contested litigation.

## II.    The Putative Collective Action Members are Similarly Situated for Purposes of Settlement.

As a threshold matter, the Court may readily conclude that the employees eligible to participate in the settlement are "similarly situated" for purposes of

settlement within the requirements of 29 U.S.C. § 216(b) of the FLSA, which is the standard for maintenance of an FLSA collective action. Here, the Putative Collective Action Members eligible to opt into the Settlement are current or former employees who during any workweek from June 1, 2016 to April 1, 2019 were employed as a Field Service Technician who traveled to client sites."[3] Because the employees held the same position and traveled to client sites during the same time period, the Court may readily conclude the employees are "similarly situated" for purposes of effectuating this Settlement.

Plaintiffs have maintained from the outset that Bell-Mark's Field Service Technicians are similarly situated for the purpose of the FLSA wage and hour claims set forth in this litigation. However, in light of the Parties' early mediation, ongoing negotiations and agreement to toll the statute of limitations during settlement discussions, the required two-stage procedural process necessary to move for conditional certification (first stage) and final certification (second stage) was not pursued by Plaintiffs. As such, the Court has yet to grant certification of the FLSA collective.

For FLSA collective actions, "the Court must complete the second stage of certification and grant final certification of the collective action before it can

---

[3] However, the relevant time period for Plaintiffs Smith, Berdanier, and Heiner date back to September 9, 2014, three years before September 8, 2017 when they filed the Lawsuit.

approve the settlement agreement." *See Singleton v. First Student Mgmt. LLC,* Civ. No. 13–1744, 2014 WL 3865853, at *3 (D.N.J. Aug. 6, 2014) (certifying collective action for settlement absent specific argument on issue); *Bredbenner v. Liberty Travel, Inc.,* 2011 WL 1344745, at *17 (D.N.J. April 8, 2011) (granting final certification prior to approving settlement of FLSA collective action). *Sawyer v. Health Care Sols. at Home, Inc.*, No. 5:16-CV-5674, 2019 WL 1558668, at *2 (E.D. Pa. Apr. 10, 2019).  Typically, plaintiffs attempt to meet this burden by having the court determine "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief, and whether they have similar salaries and circumstances of employment." *Keller v. TD Bank, N.A.,* Civ. No. 12–5054, 2014 WL 5591033, at *8 (E.D. Pa. Nov. 4, 2014) (quoting *Zavala v. Wal Mart Stores, Inc.,* 691 F.3d 527, 536 (3d Cir. 2012)).  Here, Plaintiffs are all similarly situated with regard to their FLSA wage and hour claims, and the record establishes that they were all employed by Defendant as Field Service Technicians in the same department at the same location, brought identical claims for overtime and are seeking compensation for these unpaid wages, and worked under the same terms of employment with similar salaries. Bell-Mark stipulates to certification for purposes of this settlement.  Accordingly, this Court should find that Plaintiffs and

the Putative Collective Action Members are similarly situated and grant final certification as an FLSA collective for settlement purposes.

## III.    The Settlement Is the Product of Contested Litigation

The Settlement is the product of contested litigation, and this conclusion is not altered by the Parties' having resolved this case early in the proceedings. In their Complaint, Plaintiffs presented detailed allegations regarding Defendants' policies and practices of requiring employees to work overtime hours without compensation. In its Answer, Bell-Mark denied Plaintiffs' material factual allegations and asserted numerous defenses that it argued would defeat Plaintiffs' and any putative collective/class claims in whole or in part. Through cooperative, informal exchange of data and other relevant job-related information, the Parties extensively investigated Plaintiffs' claims. In addition to their factual investigation, the Parties also analyzed the various legal issues implicated in this case, including the standards for assessing and defending claims for liquidated damages under the FLSA. The settlement of the Lawsuit was achieved only after the exchange of key information on disputed fact issues and the vetting of the Parties' positions through arms-length negotiation following mediation.

## IV.    The Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

The second prong of the Court's settlement approval inquiry focuses on two (2) issues. The first issue is confirming the existence of a *bona fide* dispute

between the Parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the Settlement.  Both are easily satisfied.

### A.    A *Bona Fide* Dispute Existed Between the Parties

Plaintiffs allege Bell-Mark violated the FLSA and Pennsylvania wage laws because it required employees to work overtime hours without compensation. Bell-Mark denies Plaintiff's allegations, contends that its policies and practices comply with all applicable laws, and asserts numerous affirmative and other defenses.

If Plaintiffs' allegations ultimately proved correct, Bell-Mark would be faced with the prospect of a substantial monetary verdict exceeding the amount of the Settlement, including additional damages for willfulness and statutory liquidated damages, as well as an obligation to pay legal fees and costs incurred by Plaintiff to prosecute the case through trial instead of the comparatively small fees incurred to obtain this early resolution.  If Bell-Mark prevailed, then Plaintiffs would obtain no recovery of any kind.  The Parties' positions were staked out in the Parties' pleadings and at the mediation, and the Court should readily conclude a *bona fide* dispute between the parties existed.

### B.    The Proposed Settlement Is Fair and Reasonable

This Settlement was the product of arm's-length negotiations by experienced counsel and approximates the value of Plaintiffs and   the Putative Collective

Action Members' total claims for unpaid overtime hours worked, plus liquidated damages, during the applicable time period, free and clear of attorneys' fees or expenses, as well as eliminating inherent risks both sides would bear if this complex litigation continued to resolution by a jury.  As a compromise, and to provide Bell-Mark with the certainty of a ceiling on liability, the Global Settlement Amount is capped at $220,000.00, even though Plaintiffs' counsel believes that the time spent by Plaintiffs and Putative Collective Action Members working unpaid overtime hours may have exceeded the time used to achieve the Global Settlement Amount.

Plaintiffs' counsel supports this compromise, in view of the disparity of factual testimony anticipated amongst both plaintiff and defense witnesses, the time and expense that would be required to analyze the expense reports at issue, and because the estimated hours worked upon which the Global Settlement Amount is based represents a reasonable approximation of the uncompensated overtime hours represented by data from Bell-Mark.  In sum, these are patently reasonable compromises in light of the risks and costs associated with prosecuting the case to a jury trial.  Under these circumstances, a presumption of fairness should attach to the Settlement.  *See Lynn's Food Stores*, 679 F.2d at 1354 (the adversarial nature of a litigated FLSA case indicates fairness).  Several specific factors confirm the Settlement's fairness and reasonableness:

### 1. Public Policy Favors Settlements

Public policy favors settlements.  This is particularly true in complex cases such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation.  *See Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor").  The Parties' early settlement is a model of adversarial positions coupled with cooperative exchange of critical information to enable the Parties and their counsel to evaluate the claims and defenses without protracted expense and burden on the Court.

### 2. Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief

The Parties disagree about the merits of the claims of Plaintiffs and the Putative Collective Action Members' claims and the viability of Bell-Mark's defenses.  If litigation continues, Plaintiffs and the Putative Collective Action Members would face many obstacles, including (i) the risk that the case would not be certified; (ii) challenges to proving damages; (iii) risk of decertification; and (v) the inherent risks of a jury trial.  The Settlement brings immediate monetary value to each Participating Collective Action Member.  Although the recovery at trial

could have been greater than sums received under the Settlement, it is also possible the recovery would have been less, or nothing at all.

Bell-Mark raised significant defenses.   Bell-Mark argued that much of the travel time at issue was not compensable under the Portal-to-Portal Act, 29 U.S.C. §254(a)(1) (time spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" is not compensable), and associated regulations.   29 C.F.R. §785.38 (travel between home and work at fixed or different locations is not compensable); 29 C.F.R. 785.39 (overnight travel away from home is not compensable if outside of employee's workday or normal work hours on non-working days, and travel outside of regular working hours is not compensable if a passenger on an airplane, train, boat, bus or car); *Espinoza v. Atlas R.R. Constr. LLC*, No. 16-1413 (3d Cir. Nov. 30, 2016) (travel that was not part of the employee's duties and occurred outside of normal work hours is not compensable under the PMWA).

Bell-Mark further argued that the position and work performed at issue in this lawsuit is exempt under the administrative exemption of the FLSA.   29 U.S.C. §213(a)(1); 29 CFR §541.200(a); *e.g. Cruz v. Lawson Software, Inc.*, 764 F.Supp.2d 1050 (D.Minn. 2011) (company consultants who installed and upgraded software products and trained clients held exempt under the administrative

exemption); *Bagwell v. Florida Broadband, LLC*, 385 F. Supp.2d 1316 (S.D. Fla. 2005) (internet service field technician held exempt under the administrative exemption).  If the jury were to agree with Bell-Mark, Plaintiffs and the Putative Collective Action Members would likely recover little or nothing.

Moreover, Plaintiffs would have to obtain class or collective action certification to present collective or class-wide claims to a jury.  Although Bell-Mark concedes the potential members of the Collective are similarly situated for settlement purposes, Bell-Mark would have vigorously argued that various differences in job duties and responsibilities preclude class and collective action certification had litigation continued.  Further Bell-Mark raised a significant numerosity defense to Plaintiffs' class action allegations, resulting in this settlement on an opt-in basis.  These issues remained uncertain, thus making settlement of the litigation a sensible option for the Parties.

In the face of these material disputes, it is significant that this Settlement brings the Participating Collective Action Members a meaningful monetary value now, not years from now, and provides certainty regarding the outcome.  *In re King Resources Co. Securities Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future.").  "In this respect, it has been held proper to take the bird in the hand

19

instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citing cases).

### 3. This Was a Complex and Potentially Lengthy Case

This case involved complex issues of fact and law which remain unanswered and would have to be resolved at or before trial. Plaintiffs would need to compile and adduce documentary evidence, representative testimony, and possibly expert testimony sufficient to establish liability and damages for the Putative Collective Action Members. Regardless of the outcome at trial, post-judgment appeals would be likely. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed Settlement.

### 4. The Parties and Their Counsel Support the Settlement

After thorough investigation of the facts and law, the Parties have gained a comprehensive knowledge of their respective claims and defenses. Additionally, the Parties have ample evidence to make an informed assessment of the proposed Settlement. "[T]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties. Courts have consistently refused to substitute their business judgment for that of counsel." *Id.* Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, the Parties' counsel believe the Settlement is fair, reasonable, and adequate. The Parties respectfully suggest this Court should

conclude the proposed Settlement reflects a fair resolution of a *bona fide* dispute under the FLSA and approve the Settlement.

## V.    Plaintiffs Smith, Berdanier and Heiner Should Receive Service Awards

The time and dedication that an individual devotes to serving as named plaintiffs in a lawsuit that inures to the common benefit of others warrants a service award "above and beyond what the typical class member is receiving." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (awarding $5,000 service award to each of four class representatives); *see also Simmons*, 2012 WL 2885919 at *2 (approving $6,000 incentive awards to each named plaintiff); *Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, 1993 WL 355466 at *2 (W.D. Okla. June 8, 1993) (awarding $10,000 service award to each of three class representatives); *Camp v. Progressive Corp.*, 2004 WL 2149079 at *7 (E.D. La. Sept. 23, 2004) (approving up to $10,000 in service awards to class representative and other plaintiffs).  Service awards "are particularly appropriate in the employment context [because] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (awarding $10,523 out of class fund of $75,000).

Plaintiffs Smith, Berdanier and Heiner substantially assisted counsel in achieving this Settlement on behalf of the Putative Collective Action Members, and should receive service awards. Plaintiff Smith was responsible for initiating this action and all of the Plaintiffs provided invaluable guidance and assistance on numerous occasions to Plaintiffs' counsel. They also assisted counsel in evaluating Defendant's proffered defenses. There is no question that the other employees have substantially benefited from their work on this Lawsuit. Without Plaintiffs' efforts, this case would not have been brought and this Settlement would not have been achieved. In light of these efforts, payment of a $10,000.00 service award to Plaintiff Smith, a $5,000.00 service award to Plaintiff Berdanier, and a $5,000.00 service award to Plaintiff Heiner is amply justified.

## VI.    Plaintiffs' Counsel Should be Awarded Their Fees and Expenses.

The Third Circuit uses two methods in determining attorneys' fees in class or collective action lawsuits, the lodestar method and the percentage-of-recovery method. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 820–21 (3d Cir. 1995). The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund "in a manner that rewards counsel for success and penalizes it for failure." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998). Further, the percentage of recovery

method is the prevailing methodology used by courts in the Third Circuit for wage and hour cases.  *Keller v. TD Bank, N.A.*, No. CIV.A. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014)

Under the FLSA, plaintiffs are entitled to reasonable attorneys' fees spent in recovering unpaid wages.  29 U.S.C. § 216(b).  The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Brown v. Phillips Petroleum Company*, 838 F.2d 10 451,455 (l0th Cir. 1988) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (l980)).   Thus, the percentage award results "in a sharing of the fees among those benefited by the litigation."  *Brown*, 838 F.2d at 454.

In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee:  "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."   *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following that advice, and desiring to avoid a second litigation over fees, the Parties have agreed to settle their dispute over the award of attorneys' fees, costs, and expenses.

The agreed maximum fee amount of $73,333.00, equaling 33 1/3% of the total Settlement is eminently reasonable.[4]  See *Wiles v. Southwestern Bell Tel. Co.*, 2011 WL 2416291, at *4-5 (W.D. Mo. June 9, 2011) (awarding 33 1/3% of the common fund in attorneys' fees); *Johnson v. Brenna*n, 2011 WL 4357376 at *13 (S.D.N.Y. September 16, 2011) (awarding 33 1/3 % of recovery, stating "In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award."); *In re Milos Litigation,* 2011 WL 6015705 (S.D.N.Y. 2011) (33 1/3%); *Williams v. Aramark Sports, LLC,* 2011 WL 4018205 at *10 (E.D. Pa. Sept. 9, 2011) (33 1/3%, stating that percentage of recovery is favored method in "common fund" cases."); and *Boone v. City of Philadelphia*, 668 F. Supp. 693, 714 (E.D. Pa. 2009) (citing a study of 289 class action settlements in the Third Circuit indicating that the average percentage awarded was 31 1/7% and the median was 33 1/3%).

Finally, Third Circuit jurisprudence also urges a "lodestar cross-check" when applying the percentage-of-recovery method to prevent a fee that represents an extraordinary lodestar multiple.  *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 (3d Cir. 2005).  "The Third Circuit has noted that a factor ranging between 1 and 4 is generally common."  *Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *16 (M.D. Pa. Oct. 2, 2017).  Here, a lodestar cross-check supports an attorneys' fees request equaling 33 1/3% of the total

---

[4] Plaintiffs' counsel also seeks reimbursement of $1,500.00, representing expenses.

Settlement.  Specifically, the loadstar in this case, at an hourly rate of $300.00,[5] would award Plaintiffs' counsel $69,405.00 for 231.35 billable hours, based on the following:

(a)     Attorney Derrek W. Cummings, as evidenced in Exhibit B, expended 147.50 hours since litigation commenced in September of 2017, in pursuing the FLSA claims;

(b)     Attorney Larry A. Weisberg, as evidenced in Exhibit C, expended 79.00 hours since litigation commenced in September of 2017, in pursuing the FLSA claims; and

(c)     Attorney Steve T. Mahan, as evidenced in Exhibit D, expended 4.85 hours since litigation commenced in September of 2017, in pursuing the FLSA claims.

Accordingly, application of the percentage-of-recovery method in this case results in an increase of only $3,928.00, or about 1.06 times lodestar; hardly an

---

[5]   This Court has previously approved an hourly rate of $300 for Plaintiffs' attorneys.  See, *Poff v. Prime Care Med., Inc.*, No. 1:13-CV-03066, 2016 WL 3254108, at *7 (M.D. Pa. June 14, 2016)  ("Considering the skill, experience, and reputation of Weisberg and Cummings, we conclude that $300 an hour is the prevailing market rate for this case.")  Based upon Mr. Mahan's experience, as evidenced by his Affidavit, counsel believes that $300 per hour is an appropriate billing rate for Mr. Mahan as well.

extraordinary multiple and well within the Third Circuit's noted factor of between 1 and 4.

Plaintiffs' counsel believes it should not be penalized for achieving the expeditious, but impressive, benefit for the Putative Collective Action Members. A fee reduction based on an expeditious settlement would only incentivize unnecessary litigation and use of the Court's resources. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159 at *1-3 (N.D. Ia. Nov. 9, 2011) (*sua sponte* increasing attorney fee from 33.33 % to 36.04 % in recognition of efficient early settlement).

Plaintiffs' counsel fee has been agreed upon by the Parties and will be paid without diminishing the fairness of the recovery to the Collective. Pursuant to the prescription of the Supreme Court in *Hensley*, 461 U.S. at 437, the Court should not disturb the Parties' settlement of the amount of Plaintiffs' counsel fees. Bell-Mark does not oppose this request for attorneys' fees and costs.

### Conclusion

This Settlement was reached as a result of contested litigation and resolves a *bona fide* dispute between the Parties. The Parties engaged in thorough investigation of the facts and law and reached a Settlement that eliminates the Parties' respective risks and minimizes their expenses and the burden on the Court. The Settlement is fair, reasonable, and adequate, and provides Participating

Collective Action Members a Settlement that approximates the value of their total claims for unpaid overtime hours worked, plus liquidated damages, during the applicable time period, free and clear of attorneys' fees or expenses.  For the reasons stated herein, Plaintiff respectfully requests that the Court approve the Settlement.

**WEISBERG CUMMINGS, P. C.**

Date: October 1, 2019          */s/ Derrek W. Cummings*
Derrek W. Cummings, Esquire
Larry A. Weisberg, Esquire

2704 Commerce Drive, Suite B
Harrisburg, PA 17110-9380
Phone: (717) 238-5707
Fax:  (717) 233-8133

***Plaintiffs' Counsel***

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the date applied by the Court's ECF filing system, I electronically filed the foregoing with the Clerk of Court using CM/ECF.

By:  *<u>/s/  Derrek W. Cummings</u>*
        Derrek W. Cummings